# IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF ALABAMA
## MOBILE DIVISION

| | |
|---|---|
| JAMIE LANDRY, ) | |
| ) | |
| PLAINTIFF, ) | |
| ) | Case No.: |
| V. ) | |
| ) | |
| HANSEN AIRPROS and AFH AIR ) | JURY TRIAL DEMANDED |
| PROS LLC, ) | |
| ) | |
| DEFENDANT(S). ) | |

## COMPLAINT

## JURISDICTION

1. The plaintiff brings this action for injunctive relief and damages under 28 U.S.C. §§ 1331, 1343(4), 2201, 2202, 29 U.S.C. § 2617(a)(2), The Family and Medical Leave Act. The jurisdiction of this Court is invoked to secure protection for and to redress the deprivation of rights caused by the Defendant.

2. This suit is authorized and instituted under Title VII of the Act of Congress known as the "Civil Rights Act of 1964," as amended, the "Civil Rights Act of 1991;" 42 U.S.C. § 2000e, et seq. (Title VII).

3. Plaintiff timely filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) within 180 days of the last discriminatory act. The plaintiff further sued within ninety (90) days after receipt of the right-to-sue letter issued by the EEOC.

## PARTIES

4. Plaintiff, Jamie Landry, ("Plaintiff" or "Landry") is a resident of Wilmer, Mobile County, Alabama, and performed work for the Defendant in the counties composing the Southern District of Alabama during the events of this case. Thus, under 28 U.S.C. § 1391(b), venue for this action lies in the Mobile Division.

5. Defendant Hansen Air Pros ("Defendant") is a company registered and doing business in the State of Alabama and has sufficient minimum contacts with the State of Alabama. It is subject to service of process in Alabama.

6. Defendant AFH Air Pros LLC ("Defendant") is a company registered and doing business in the State of Delaware and has sufficient minimum contacts through its ownership of Hansen Air Pros with the State of Alabama. It is subject to service of process in Alabama.

7. Defendants and its other affiliated entities, have common ownership and management such that it employed at least two hundred and fifty (250) people during the current or preceding calendar year.

8. Defendant employed at least fifty (50) people for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year. Defendant employed these fifty (50) employees within 75 miles of Plaintiff's worksite.

## FACTS

9. Plaintiff incorporates by reference and realleges each of the preceding paragraphs as if set out herein.

10. Defendant terminated Plaintiff's employment on or about December 13, 2022.

11. Landry is a woman.

12. Landry began working for the defendants' predecessor entity in April 2019.

13. After Landry began working, she was promoted on more than one occasion and received consistent praise for her performance.

14. Landry had no write-ups until the events described in this Complaint.

15. At the time of her employment, Landry was the only woman working as a service technician in the office.

16. In September 2020, Landry had her son.

17. In January 2022, it became clear that her son had a speech delay that was indicative of autism.

18. Thereafter, Landry needed time off weekly to take her son to speech therapy.

19. Even though Landry worked 40 hours per week for the previous year and the company has more than 50 employees in a 75-mile radius of her job, Landry was never offered FMLA.

20. Landry continued to take time off each Tuesday to go to her son's appointments.

21. Over time, Landry's manager Brett Deakle became disenchanted with and expressed his disapproval of her taking time off for her son's appointments.

22. In September 2022, Landry asked Deakle for additional training so she could continue to improve her skills.

23. Male employees were routinely allowed to take part in training when they asked.

24. Deakle refused her request for training.

25. Around that time, Landry also took her son to the doctor and learned that the company had not paid her medical insurance premiums even though they had deducted money from her pay to do so.

26. After Landry was nearly turned away from the doctor, she reported the problem to the company.

27. This was the second time in a year that the company had failed to pay for her insurance after deducting it from her pay.

28. Then Landry noticed that her hours were reduced.

29. Landry's hours were reduced to well under forty such that it became hard for her to make ends meet.

30. Male employees did not see the same reductions in hours as Landry.

31. Further, Landry only sought time off once a week for a short appointment for her son, yet her hours were cut far in excess of the time needed for those appointment.

32. Moreover, male employees were allowed to request that their appointments be set in a geographic area near their appointments when they needed to attend personal appointments which allowed them to minimize their time off when they needed to conduct personal business.

33. However, when Landry requested that her appointments be set in the area near her son's appointments, the request was denied even though there were ample opportunities to schedule her as she requested.

34. Defendant initially claimed that there was a decrease in business that precipitated the cut in Landry's hours.

35. This is false. Defendants continued to hire new service technicians despite failing to schedule Landry for full time hours.

36. On December 6, 2022, Landry sent a message to the company asking what was going on with her hours and that she did not want to go on any jobs until she could find out why her hours were being diminished as compared to her male counterparts.

37. When Landry arrived at the office, she reiterated her hours were being diminished because of sex.

38. When Landry asked why her hours were being cut, the company said that there was a hiring freeze.

39. After Landry complained she was placed on leave and later fired.

40. When Defendant terminated Landry, she asked her why she was being terminated.

41. At first, Defendants refused to tell Landry why she was being terminated.

42. Later, Landry was told that she was terminated because of her disrespectful behavior.

43. Other employees who were male or who had not engaged in protected activity were disrespectful, engaged in threatening behaviors, or fought and were not terminated.

44. Landry's position was already advertised before her last meeting with her manager.

45. Landry's position was filled by a person who had not complained about discrimination on the basis of sex.

46. Landry's position was filled by a male.

47. Landry's position was filled by a person who was not seeking FMLA.

## COUNT I TITLE VII – SEX- DISCHARGE

48. Plaintiff incorporates by reference and realleges each of the preceding paragraphs as if set out herein.

49. Plaintiff is a woman.

50. Plaintiff was qualified for the position of service technician as she was performing that role for more than a year before the events that are alleged in this complaint.

51. Landry had no discipline in her employee record until the events that are referenced in this Complaint.

52. Landry was the only female service technician in the Mobile office.

53. After Landry began taking leave for the care of her son, Defendant reduced her hours.

54. Male employees did not have similar decreases in hours.

55. Defendant's employee, Deakle, terminated Plaintiff's employment on or about December 6, 2022.

56. Initially, Defendant refused to explain why she was terminated, but eventually it alleged that the termination was because Landry was disrespectful.

57. Male employees engaged in the same or similar conduct but remained employed.

58. Defendant's actions in terminating Plaintiff's employment violated Title VII.

59. Because of Defendant's violation of Title VII, Plaintiff has been damaged, suffering loss of pay and benefits.

60. Defendant's sex was a motivating factor in Defendant's decision to terminate Plaintiff's employment.

61. Because of Defendant's discriminatory decision made in whole or in part because of his race, Plaintiff has lost pay and continues to be paid less.

62. Defendant's actions in not promoting/hiring Plaintiff violated Title VII.

## COUNT II TITLE VII – SEX- DISCRIMINATION

63. Plaintiff incorporates by reference and realleges each of the preceding paragraphs as if set out herein.

64. Plaintiff is a woman.

65. Plaintiff was qualified for the position of service technician as she had satisfactorily performed the role for more than a year before the events that form the basis of this claim.

66. Landry had no discipline in her employee record until the events that are referenced in this Complaint.

67. Landry was the only female service technician in the Mobile office.

68. After Landry began taking leave for the care of her son, Defendant reduced her hours.

69. Male employees did not have similar decreases in hours.

70. In fact, Defendants continued to hire additional service technicians while refusing to provide Landry with full-time hours.

71. Defendant's actions in scheduling males for more hours than Landry, a woman, violated Title VII.

72. Because of Defendant's violation of Title VII, Plaintiff has been damaged, suffering loss of pay and benefits.

73. Defendant's sex was a motivating factor in Defendant's decision to reduce Plaintiff's hours.

74. Because of Defendant's discriminatory decision made in whole or in part because of her sex, Plaintiff has lost pay and continues to be paid less.

## COUNT III TITLE VII - RETALIATION

75. Plaintiff incorporates by reference and realleges each of the preceding paragraphs as if set out herein.

76. Plaintiff was qualified for her position and able to perform the essential functions of the job.

77. On or about December 2, 2022, Plaintiff engaged in protected activity, when she reported discrimination based on sex.

78. Within days, Deakle suspended Landry and later terminated her employment.

79. Initially, Plaintiff was not told why she was being terminated, but eventually, the company said it was because she was disrespectful.

80. Other employees, who had not engaged in protected activity were disrespectful or physically violent but were not terminated.

81. But for Plaintiff's protected activity, Defendant would have retained Plaintiff in her position as a service technician.

82. Defendant violated Title VII by terminating Plaintiff for engaging in protected activity.

83. Because of Defendant's violation of Title VII, Plaintiff has been damaged suffering loss of pay, benefits, and mental anguish.

## COUNT IV FMLA INTERFERENCE

84. Plaintiff incorporates by reference and realleges each of the preceding paragraphs as if set out herein.

85. During the 12-month period before January 14, 2022, Defendant employed Plaintiff for at least 1,250 hours of service.

86. Defendant employs fifty (50) or more persons for each working day during each of the 20 or more calendar workweeks in the current or preceding calendar year of Plaintiff's January 14, 2022, health issues related to pregnancy.

87. During the week of January 14, 2022, Defendant employed fifty or more employees, worked within 75 miles of the location where Plaintiff worked.

88. On January 14, 2022, Plaintiff provided notice of unforeseeable FMLA leave to Deakle.

89. Plaintiff provided notice of her unforeseeable need of FMLA leave the same day that the need for FMLA leave arose.

90. Before January 14, 2022, Plaintiff had never informed Defendant of the need for FMLA leave.

91. Defendant failed to provide Plaintiff with a Notice of Eligibility and Rights and Responsibilities form.

92. Defendant failed to provide Plaintiff with an FMLA Designation Notice form.

93. Defendant failed to provide Plaintiff with an FMLA Certification of Health Care Provider for Family Member's Serious Health Condition form.

94. Defendant interfered with Plaintiff's FMLA rights by not allowing her to commence leave job protected leave.

95. On December 6, 2022, Defendant terminated Plaintiff's employment.

96. Defendant's employees knew that Plaintiff's son suffered from FMLA qualifying conditions for which he needed treatment through a doctor.

97. Because of Defendant's interference with Plaintiff's rights under the FMLA, Plaintiff has been damaged, suffering loss of pay and benefits.

**COUNT V - FMLA RETALIATION**

98. Plaintiff incorporates by reference and realleges each of the preceding paragraphs as if set out herein.

99. During the 12-month period before January 14, 2022, Defendant employed Plaintiff for at least 1,250 hours of service.

100. Defendant employs fifty (50) or more persons for each working day during each of the 20 or more calendar workweeks in the current or preceding calendar year before January 14, 2022.

101. During the week of January 14, 2022, Defendant employed fifty or more employees, who worked within 75 miles of the location where Plaintiff worked.

102. On January 14, 2022, Plaintiff provided notice of foreseeable intermittent FMLA leave to Deakle.

103. Before January 14, 2022, Plaintiff had never informed Defendant of a need for FMLA leave.

104. Defendant willfully failed to provide Plaintiff with a Notice of Eligibility and Rights and Responsibilities form.

105. Defendant willfully failed to provide Plaintiff with an FMLA Designation Notice form.

106. Defendant willfully failed to provide Plaintiff with an FMLA Certification of Health Care Provider for Employee's Serious Health Condition form.

107. Although defendant allowed Landry to take leave, the company reduced her hours substantially and in amounts far greater than the time she needed to attend her son's appointments.

108. Defendants also began to deny Landry training opportunities after she sought and began time off from work for her son's appointments.

109. Defendant terminated Plaintiff's employment on or about December 6, 2022.

110. Defendant's employees knew that Plaintiff son suffered from FMLA qualifying conditions for which he needed treatment through a doctor beginning in January 2022.

111. Defendant's employee, Deakle, terminated Plaintiff's employment.

112. Initially, the company refused to provide a reason for the termination but later the company alleged that Landry was being disrespectful during a meeting in which she complained about the reduction in her hours.

113. Landry was not disrespectful before she was terminated.

114. Employees who had not sought FMLA were disrespectful or even violent have engaged in similar behavior and not been terminated.

115. Defendant's manager, Deakle, terminated Plaintiff's employment, in whole or part, because of Plaintiff's exercise of FMLA rights.

116. Because of Defendant's retaliatory termination decision in violation of the FMLA, Plaintiff has been damaged, suffering loss of pay and benefits.

**PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff respectfully prays for the following relief:

  A. Grant Plaintiff a permanent injunction enjoining the Defendant, its agents, successors, employees, attorneys and those acting with the Defendant and at the Defendant's request from continuing to violate the terms of Title VII of the Civil Rights Act of 1964;

  B. Grant Plaintiff a permanent injunction enjoining the Defendant, its agents, successors, employees, attorneys and those acting with the Defendant and at the Defendant's request from continuing to violate the terms of the Family and Medical Leave Act;

  C. Grant Plaintiff a permanent injunction enjoining the Defendant, its agents, successors, employees, attorneys and those acting with the Defendant and at the Defendant's request from continuing to violate the terms of the Fair Labor Standards Act;

  D. Enter an Order requiring the Defendant to make Plaintiff whole by awarding reinstatement to the position she would have had, had she not been terminated;

  E. Award her back pay, with employment benefits, front pay, liquidated damages; compensatory damages, special damages; punitive damages nominal damages;

  F. Attorneys' fees and costs;

G. Plaintiff requests that the Court award Plaintiff equitable relief as provided by law; and,

H. Any different or additional relief as determined by the Court to which Plaintiff is entitled.

                /s/Kira Fonteneau
                Kira Fonteneau (ASB-7338-K58F)

**OF COUNSEL:**

BARRETT & FARAHANY

2 North 20th St, Suite 900
Birmingham, AL 35203
P.O. Box 530092
Atlanta, GA 30314
(205) 564-9005
kira@justiceatwork.com

IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA
MOBILE DIVISION

| | | |
|---|---|---|
| JAMIE LANDRY, | ) | |
| PLAINTIFF, | ) | |
| | ) | |
| V. | ) | Case No.: |
| | ) | |
| HANSEN AIRPROS, and AFH AIR | ) | |
| PROS LLC, | ) | JURY TRIAL DEMANDED |
| | ) | |
| DEFENDANT(S). | | |

## CONFLICT DISCLOSURE STATEMENT

COMES NOW the Plaintiff, Jamie Landry, through the undersigned attorney of record, and under the Order of this Court, making the following disclosure about parent companies, subsidiaries, partners, limited liability entity members and managers, trustees (but not trust beneficiaries), affiliates, or similar entities reportable under the Northern District of Alabama's Order:   **This party is an individual.**

Respectfully submitted on December 7, 2023.

/s/Kira Fonteneau
Kira Fonteneau (ASB-7338-K58F)

**OF COUNSEL:**

BARRETT & FARAHANY

2 North 20th St, Suite 900
Birmingham, AL 35203
P.O. Box 530092
Atlanta, GA 30314
(205) 564-9005
kira@justiceatwork.com

Case 1:23-cv-00463-WS-M   Document 1   Filed 12/07/23   Page 18 of 18   PageID #: 18